IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


TRACY GADDY                          :        CIVIL ACTION
                Plaintiff            :
                                     :
        v.                           :
                                     :
PHILADELPHIA HOUSING                 :        NO. 06-CV-04570
AUTHORITY                            :
                Defendant            :


MEMORADUM OPINION

TIMOTHY R. RICE                                      July 28, 2008
U.S. MAGISTRATE JUDGE

        Resolution of defendant Philadelphia Housing Authority's ("PHA") motion for summary

judgment rests on whether plaintiff Tracy Gaddy has offered sufficient evidence of a prima facie

case of racial and gender discrimination; whether Gaddy can prove PHA's legitimate non-

discriminatory reason was a pretext for racial and gender discrimination; whether Gaddy can

prove a causal connection between her protected activity and her termination; and whether the

circumstances constituted a hostile work environment.  For the following reasons, I will grant

PHA's motion for summary judgment for the gender discrimination claim based on the written

reprimand, race and gender discrimination claims based on her termination, and the hostile work

environment claim.  I will deny PHA's motion for summary judgment for the race discrimination

claim based on the written reprimand and the retaliation claim.

I.      Background

The evidence will be viewed in the light most favorably to Gaddy, the non-moving party.[1]

See Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).  Gaddy,

an African American woman, worked at PHA from November 1985 through January 28, 2005.

See Complaint ¶ 6, 21, Gaddy v. Phila. Hous. Auth., 06-4570 (E.D. Pa. filed Oct. 13, 2006)

[hereinafter Complaint].  Gaddy's troubles began in December 2003, when Jessica Diaz became

---

[1]  PHA maintains I should rely on Gaddy's deposition testimony rather than her affidavit.  See
Reply of Defendant's Philadelphia Housing Authority to Plaintiff's Response to Defendant's
Motion for Summary Judgment at 4-6, Gaddy v. Phila. Hous. Auth., 06-4570 (E.D. Pa. filed Jan.
17, 2008) [hereinafter Defendant's Reply].  Gaddy's affidavit, attached to Plaintiff's
Memorandum in Support of her Response to Defendant's Motion for Summary Judgment at
Exhibit A [hereinafter Plaintiff's Response], will be used only where it corroborates Gaddy's
deposition testimony, attached to Plaintiff's Response at Exhibit B and Supplement to Exhibit B,
and Memorandum of Law in Support of Defendant's Motion for Summary Judgment at Exhibit
A, Gaddy v. Phila. Hous. Auth., 06-4570 (E.D. Pa. filed Dec. 7, 2007) [hereinafter Defendant's
Memorandum], or another person's deposition.
   A party cannot create a material issue and defeat summary judgment by filing an affidavit
"disputing his or her own sworn testimony without demonstrating a plausible explanation for the
conflict." Jimenez v. All Am. Rathskeller, Inc., 503 F.3d 247, 251 (3d Cir. 2007) (quoting Baer
v. Chase, 392 F.3d 609, 624 (3d Cir. 2004).  Prior depositions are more reliable than affidavits
because the deponent was cross-examined.  See id. at 253 (citing Perma Research &
Development Co. V. Singer Co., 140 F.2d 572, 578 (2d Cir. 1969)).  A "sham affidavit" cannot
be used to raise a genuine issue of material fact because "it is merely a variance from earlier
deposition testimony." Jimenez, 503 F.3d at 253.  An affidavit is a sham where it is "offered
solely to defeat summary judgment" and the trial judge concludes "no reasonable jury could
accord that affidavit evidentiary weight." Id.  The United States Court of Appeals for the Third
Circuit adopted a flexible approach to the sham affidavit doctrine.  Id.  Not all contradictory
statements are shams and affidavits are not disregarded where independent evidence supports a
questionable affidavit because the affiant may have been "mistaken, confused, or not in
possession of all the facts" during the deposition.  Id. (citing Baer, 392 F.3d at 625).
   To the extent the affidavit differs from depositions, I will rely on the deposition testimony
because Gaddy was subject to cross-examination at the deposition and Gaddy failed to offer
independent evidence to support the affidavit statement, Jimenez, 503 F.3d at 253; see Watkins
v. Sowders, 449 U.S. 341, 348 n.4 (1981) ("[cross-examination] is beyond any doubt the greatest
legal engine ever invented for the discovery of truth") (quoting 5 J. Wigmore, Evidence § 1367,
p/ 32 (J. Chadbourn rev. 1974)).  Even if relied on, statements contained only in Gaddy's
affidavit would not create a material issue of fact sufficient to change the summary judgment
analysis.

her supervisor.  See Complaint at ¶ 8; Plaintiff's Ex. A at ¶ 5, Gaddy v. Phila. Hous. Auth., 06-4570 (E.D. Pa. filed Jan. 9, 2008) [hereinafter Plaintiff's Ex.]; Plaintiff's Ex. D at 13-14.  Gaddy alleges she "became the target of . . . Diaz and was subjected to unfair scrutiny, false accusations and unwarranted and unfair discipline." See Complaint at ¶ 10.

Diaz sometimes did not permit Gaddy to take a lunch or required Gaddy to work through lunch, see Plaintiff' Ex. A at ¶ 5a, ¶ 8; Supplement to Plaintiff's Ex. B at 124, and required Gaddy work more than other managers and supervisors.  See Plaintiff's Ex. A at ¶ 5a; Supplement to Plaintiff's Ex. B at 123.  Diaz, however, allowed Robert Smith, the Caucasian superintendent of Blumberg Apartments, to take two to three hour lunches.  See Plaintiff's Ex. A at ¶ 5a; Supplement to Plaintiff's Ex. B at 125-26; Defendant's Ex. A at 14-15; Plaintiff's Ex. J at ¶ 4.  Diaz directed Gaddy to inspect the buildings alone because Smith was a Caucasian and would not be safe inspecting the buildings, whose tenants where predominately African American.  See Plaintiff's Ex. A at ¶ 5b; Defendant's Ex. A at 15; Plaintiff's Ex. J at ¶ 4; Plaintiff's Ex. L at ¶ 3.  Diaz alleged a Caucasian tenant accused Gaddy of being nasty and discourteous.  Defendant's Ex. A at 17-18.  When Gaddy informed Diaz she had not been working during the alleged incident, Diaz responded "who cares, you all look alike."  See Plaintiff Ex. A at ¶ 5f; Defendant's Ex. A at 18.

Diaz did not discipline a Hispanic male maintenance worker who was visibly intoxicated at work, and routinely approved sick leave for Smith and Sammy Colon, a Hispanic maintenance worker.  See Plaintiff's Ex. A at ¶ 5g-h; Defendant's Ex. A at 22; Supplement to Plaintiff's Ex. B at 126; see also Plaintiff's Ex. L at ¶ 4.  In April 2004, however, when Gaddy took sick leave, Diaz directed that Gaddy be classified as absent without leave.  See Plaintiff's Ex. A at ¶ 5h;

Supplement to Plaintiff's Ex. B at 124; Plaintiff's Ex. L at ¶ 2; <u>see also</u> Plaintiff's Ex. J at ¶ 3. Gaddy was required to work weekends; however, this policy was in place prior to Diaz's arrival. <u>See</u> Plaintiff's Ex. A at ¶ 8.

In March 2004, Gaddy entered an emergency work order into the computer system.  <u>See</u> Plaintiff's Ex. A at ¶ 5c.  The computer system electronically transmitted work orders to Smith in the maintenance office, where Smith and those he supervised processed the order.  <u>See</u> Plaintiff's Ex. A at ¶ 5c; <u>see also</u> Defendant's Ex. B at 24 (manager enters order in system and sometimes calls if it is serious enough).  Smith did not immediately respond to the work order entered by Gaddy.  <u>See</u> Plaintiff's Ex. A.  Diaz gave Gaddy a written reprimand for failing to call Smith about the work order, but did not reprimand Smith for failing to monitor the work order.  <u>See also</u> Defendant's Ex. C at 100; Defendant's Ex. D.  After Gaddy brought the inconsistency to the regional managers' attention, Diaz's superior instructed her to discipline Smith.  <u>See</u> Plaintiff Ex. A at ¶ 5c; <u>see</u> Defendant's Ex. C at 59 (Diaz testified it was possible she was instructed to discipline Smith).

In April 2004, Diaz gave Gaddy an unfavorable evaluation, allegedly because she was unable to work with Smith.  <u>See</u> Plaintiff Ex. A at ¶ 5e; Supplement to Plaintiff's Ex. B at 123-24.  Prior to Diaz's arrival as supervisor, Gaddy had received above satisfactory performance reviews.  <u>See</u> Plaintiff Ex. A at ¶ 4.

During the winter and spring months of 2004, Gaddy contacted Diaz and Daniel Quimby, the executive manager of the operations group, with complaints of discriminatory treatment.  <u>See</u> Defendant's Ex. A at ¶ 47-51; Plaintiff's Ex. C at 8; Plaintiff's Ex. N.  Gaddy also filed a grievance regarding the March, 2004 written reprimand for failing to call maintenance after she

entered the emergency work order.  PHA denied her grievance.  See Defendant's Ex. A at 58; Defendant's Ex. E at 11.

In May 2004, Gaddy filed a charge of discrimination with the Pennsylvania Human Relations Commission ("PHRC") alleging race and sex discrimination, and racial and sexual harassment.  See Affidavit at ¶ 16; Complaint at ¶ 18.  PHA and Diaz were notified of the PHRC complaint, which contained Gaddy's claims of discrimination and harassment.  Complaint at ¶ 20; see Plaintiff's Ex. I at 48-49.

Meanwhile, in the summer of 2004, Gaddy became embroiled in an unrelated controversy with a PHA tenant.  She had assisted a tenant with childcare and took temporary custody of the tenant's baby in August 2004, when Gaddy traveled for vacation.  See Plaintiff's Ex. A at ¶ 20. While Gaddy was on vacation, the baby's mother falsely accused Gaddy of kidnapping and criminal conduct.  See Plaintiff's Ex. A at ¶ 25; Defendant's Ex. G at 2.  The tenant supplied PHA with a form Gaddy provided to the tenant's Department of Human Services case worker listing Gaddy's home address as 7610 N. Front Street, Montgomery Co., PA 19012, not her Philadelphia address on Sommers Road.  See Defendant Ex. F.  PHA previously knew Gaddy owned vehicles outside of Philadelphia because PHA required her to annually submit to personnel a copy of her driver's license, which also listed a Montgomery County address.  See Plaintiff's Ex. A at ¶ 31.  Upon Gaddy's return from vacation, Diaz informed Gaddy she would be investigated for kidnapping and violating PHA's residency policy.[2]  See Plaintiff's Ex. A at ¶ 27; Plaintiff's Ex. D at 89; Defendant's Ex. G.  Gaddy's co-workers heard Diaz label her a

_____

[2]  PHA's Human Resources Manual Residence Policy requires "all employees of the PHA be residents of the City of Philadelphia" unless they were non-residents employed by PHA prior to July 1, 1980.  See Defendant's Ex. H.  The policy defines residence as "the actual domicile of the individual."  Id.

5

kidnapper.  See Plaintiff's Ex. L.  In September 2004, the tenant dispute led PHA to transfer

Gaddy to another housing development outside Diaz's jurisdiction.  See Plaintiff's Ex. A at ¶ 8;

Defendant's Ex. A at 110; Defendant's Memorandum of Law at 9 n.3.

     Diaz informed PHA's human resources department of Gaddy's residency issue.

See Defendant's Ex. G.  In August and September 2004, PHA police conducted a residency

investigation, which included a document review and surveillance of both properties.  See

Defendant's Ex. J at 1.  On January 21, 2005, Sibyl Bryant, the general manager of human

resources, informed Gaddy she was being investigated for violating PHA's residency policy and

asked if PHA officials could visit the Sommers Road Philadelphia address, where Gaddy claimed

she resided.  See Plaintiff's Ex. A at ¶ 30.  Gaddy showed PHA Police Detectice Andre

Djugninov and Equal Employment Opportunity Officer Rosanna Grdinich,[3] who is supervised by

Bryant, the Sommers Road residence.  See Plaintiff's Ex. A at ¶ 30.  Following its investigation,

PHA police concluded Gaddy did not live at the Philadelphia address.  See Defendant's Ex. J.

     Bryant reviewed the police findings and the information Gaddy provided.  See Plaintiff's

Ex. I.  On January 28, 2005, Bryant terminated Gaddy for violating PHA's residency policy.

See Plaintiff's Ex. I at 40; Defendant's Ex. M.  Subsequent to her termination, Gaddy provided

additional evidence she resided at the Sommers Road address.  See Plaintiff's Ex. A at ¶ 34.

PHA refused to re-instate her.  Id.

---

[3]  Grdinich was the equal employment opportunity officer who received Gaddy's charge of
discrimination, created a file, submitted a memorandum to her supervisor to determine which
outside law firm would handle the charge, and scheduled an interview for outside counsel with
Diaz.  See Ex. O at 8.  Although she was a former police officer, she did not conduct
investigations and, other than this home visit, did not conduct home inspections for PHA.  See id.
at 11.

Gaddy filed the current complaint alleging: (1) PHA violated 42 U.S.C. § 1981 by depriving her of "her right to make and enforce contracts and to full and equal benefit of [PHA's] regulations and all laws and proceedings for the security of [Gaddy's] employment because of [Gaddy's] race and national origin,"[4] see Complaint at ¶ 32; (2) PHA "discriminated against [Gaddy] because of her race and sex; subjected her to harassment and have caused her to work in a hostile work environment with respect to the terms and conditions of her employment in violation" of Title VII of th Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), see Complaint at ¶ 35; and (3) PHA's conduct constitutes "discrimination, harassment, hostile work environment[,] and retaliatory discharge in violation of the Pennsylvania Human Relations Act," see Complaint at ¶ 38.

II.      Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of showing the record reveals no genuine issue as to any material fact and that they are entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Once the moving party has met its burden, the non-moving party must go beyond the pleadings to set forth "specific facts showing a genuine issue for trial."  Fed. R. Civ.

_____

[4]  Gaddy alleged PHA violated section 1981 in discriminating against her based on her national origin, see Complaint at ¶ 32.  However, her brief and evidence presented  provide no explanation as to how she was discriminated against based on her national origin.  Gaddy presented no evidence of her national origin.  A claim based solely on national origin likely is an insufficient basis for a section 1981 claim.  See Barhar v. Nw. Human Serv., 2007 WL 320256, at *5 (E.D. Pa. Jan. 30, 2007) (Green, S.J.); Beaubrun v. Inter Cultural Family, 2006 WL 1997371, at *4 (E.D. Pa. July 13, 2006) (Stengel, J.).

P. 56(e)(2).  However, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts;" it must produce competent evidence supporting opposition.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  I must resolve all justifiable inferences in the non-moving party's favor. Sommer v. Vanguard Group, 461 F.3d 397, 403 (3d Cir. 2006).  I may not consider evidence on a motion for summary judgment that would not be admissible at trial.  Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 n.13 (3d Cir. 1999).  I may not weigh the evidence or make credibility determinations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Therefore, "where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  Big Apple BMW, Inc., 974 F.2d at 1363.

       To defeat a motion for summary judgment, factual disputes must be both material and genuine.  Anderson, 477 U.S. at 248.  An issue is "material" if it is predicated upon facts that are relevant and necessary and that may affect the outcome of the matter pursuant to the underlying law.  Id.  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 248-49.  Summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, because such a failure as to an essential element necessarily renders all other facts immaterial.  Celotex Corp., 477 U.S. at 322-23.  Thus, if there is only one reasonable conclusion from the record regarding the potential verdict under the governing law, summary judgment must be awarded to the moving party.  Anderson, 477 U.S. at 250.

III.   <u>Discussion</u>

    A.   <u>Discrimination based on Race and Gender</u>

Section 1981[5] discrimination claims, Title VII discrimination claims, and PHRC claims are analyzed using the <u>McDonnell Douglas</u> burden-shifting analysis.  <u>Pamintuan</u>, 192 F.3d at 385 (Section 1981 and Title VII); <u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 105 (3d. Cir. 1996) (PHRA). Under the <u>McDonnell Douglas</u> test, Gaddy "bears the initial burden of establishing a prima facie case by a preponderance of the evidence."  <u>See Sarullo v. U.S. Postal Service</u>, 352 F.3d 789, 797 (3d Cir. 2003) (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993)).  After the plaintiff establishes a prima facie case, "the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'"  <u>Sarullo</u>, 352 F.3d at 797 (quoting <u>McDonnel Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973)).  The plaintiff must then establish the employer's proffered reason was pretext for discrimination.  <u>Sarullo</u>, 352 F.3d at 797.

    1.   <u>Prima Facie Case</u>

Whether the plaintiff established a prima facie case is a question of law.  <u>Sarullo</u>, 352 F.3d 797.  Gaddy must demonstrate (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action despite being qualified; and (4) this action occurred under circumstances raising an inference of discrimination.  <u>Sarullo</u>, 352 F.3d at 797.

"The evidentiary burden at this stage is rather modest: it is to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent, i.e., that discrimination

---

[5]  "Section 1981 prohibits 'racial' discrimination in the making of private and public contracts." <u>See</u> <u>Pamintuan</u>, 192 F.3d at 385.

could be the reason for the employer's action." Coulton v. Univ. of Pennsylvania, 2006 WL 759705, at *5 (E.D. Pa. Mar. 21, 2006) (Padova, J.) (emphasis deleted) (quoting Marzano v. Computer Science Corp., 91 F.3d 497, 508 (3d Cir. 1996)). "[T]he prima facie test remains flexible and must be tailored to fit the specific context in which it is applied." Sarullo, 352 F.3d at 797-98 (citing Geraci v. Moody Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996)). "[A] major purpose of the prima facie case is to eliminate the most obvious, lawful reasons for the defendant's action." Pivorotto v. Innovative Sys., Inc., 191 F.3d 344, 352 (3d Cir. 1999). The inquiry's central focus is "whether the employer is treating 'some people less favorable than others because of their race, color, religion, sex, or national origin.'" Pivorotto, 194 F.3d at 352 (citing Int'l Bhd. of Teamsters v. United States, 431 U.S. 342, 335 n.15 (1977)).

PHA disputes only Gaddy's evidence on the final element.  It claims Gaddy "must identify similarly situated men and/or African Americans who were treated more favorably than she was." See Defendant's Memorandum at 14.  PHA relies on Bullock v. Children's Hosp. of Phila., 71 F. Supp. 2d 482, 489 (E.D. Pa. 1999) (Reed, J.), claiming "the individuals with whom a plaintiff seeks to be compared must be engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." See Defendant's Memorandum at 14-15 (citing Bullock, 71 F.3d at 489).

PHA's position improperly restricts the inquiry.  First, the fourth element no longer requires the plaintiff prove "other similarly situated employees outside [the plaintiff's] protected class were more favorably treated under similar circumstances." Sarullo, 352 F.3d at 798 n.7. Rather, the plaintiff may offer evidence of any circumstances that would give rise to an inference

10

of unlawful discrimination.  Williams-McCoy v. Starz Encore Group, 2004 WL 356198, at *5

(E.D. Pa. Feb. 5, 2004) (Yohn, J.) (citing Pivirotto, 191 F.3d at 357).  Second, Bullock

recognizes alternative means of establishing an inference of discrimination.  See Bullock, 71 F.

Supp. 2d at 489-90.  After the court found the plaintiff failed to establish a prima facie case by

comparing similarly situated individuals and could not establish a prima facie case by comparing

differently situated individuals, the court noted its finding did "not end the inquiry."  Bullock, 71

F. Supp. 2d at 489-90.  The court reasoned it must "consider the unique nature of the

circumstances and evidence presented to determine whether there is sufficient evidence to

support an inference of discrimination."  Id. at 90.  Nevertheless, the court found the plaintiff

failed to present evidence she was terminated under circumstances giving rise to an inference of

discrimination.  Id.  Her evidence consisted of her testimony she believed she was discriminated

against because she could think of no other reason for the employer's criticism and the noted

deficiencies were due to another secretary's performance problems.  Id.

Similarly, in Sarullo, the plaintiff's evidence "consisted solely of his own assertion that

he was not rehired because he is Native American" supported by his deposition and affidavits

suggesting his co-workers and supervisors knew he was Native American and called him

derogatory names.  Sarullo, 352 F.3d at 798.  The United States Court of Appeals for the Third

Circuit noted "[a]lthough he need not establish" non-Native Americans were rehired after

criminal charges, "he must establish some causal nexus between his membership in a protected

class and the decision not to rehire him."  Id.; accord Iyer v. Everson, 382 F. Supp. 2d 749, 757

(E.D. Pa. Aug. 18, 2005) (Brody, J.) (plaintiff did not present evidence employer treated him less

favorably and did not establish a causal nexus between his race, color, religion, sex, or national

origin and the employment action).

Gaddy claims she was treated differently than Caucasian and Hispanic males, citing Smith as an example.  See Plaintiff's Memorandum at 40-41  Smith is not a similarly situated individual because, unlike Gaddy, he is a union member.[6]  See Watkins v. Children's Hosp. of Phila., 1997 WL 793518, at *2 (E.D. Pa. Dec. 3, 1997) (Kelly, J.) (registered nurse and nurse's aid not similarly situated); accord Johnson v. Pepsi Cola Gen. Bottlers, Inc., 2005 WL 1629895, at *7 (E.D. Wis. Jul. 6, 2005) (a union member and a non-union employee are not similarly situated).  Gaddy cites no contrary legal authority.  As a union members, Smith was subject to a collective bargaining agreement that limited PHA's ability to discipline Smith and its ability to require Smith to work longer hours.  These limitations did not exist in Gaddy's employment with PHA.  Because Gaddy cannot establish she was treated different than a similarly situated person, she must present evidence which gives rise "to an inference of discrimination" to establish the fourth prong of the prima facie case.  See Williams-McCoy, 2004 WL 356198, at *5 (fourth

---

[6]  Gaddy suggests she presented direct evidence of discrimination.  See Plaintiff's Response at 41.  Direct evidence is "overt or explicit evidence which directly reflects discriminatory bias by a decision maker."  Bullock, 71 F. Supp. 2d at 485 (citing Armbruster v. Unisys Corp., 32 F.3d 768, 778-79 (3d Cir. 1994)).  The plaintiff must produce direct evidence "the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision."  Price Waterhouse, 490 U.S. at 277 (O'Connor, J., concurring).  To proceed with direct evidence, Gaddy "must present evidence that is so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case to shift the burden of production.  Id. (citing Armbruster, 32 F.3d at 778).  When direct evidence is presented, "both the burden of production and the risk of non-persuasion are shifted to the defendant."  Bullock, 71 F. Supp. 2d at 485 (citing Armbruster, 32 F.3d at 778).  "[C]omments, even by a decision-maker, will not constitute direct evidence of discrimination, unless they are related to the decisional process itself."  Id. at 486 (citing Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992)).  Gaddy claims she provided direct evidence of Diaz's reason for changing Gaddy's work duties, citing Diaz's comment she should walk the buildings because she was African American and Smith was Caucasian as an example.  However, because Diaz's comment was unrelated to an adverse employment action, it is not sufficient to place the burden on PHA.  See Bullock, 71 F. Supp. 2d at 486 (citing Ezold, 983 F.2d at 545).

element satisfied if evidence raises an inference of discrimination).

          a.      Written Reprimand

Gaddy presented sufficient evidence from which a reasonable jury could conclude Diaz acted with racial discrimination in her decision to reprimand Gaddy for Gaddy's failure to telephone Smith regarding the work order.  Gaddy maintains Diaz made disparaging remarks to Gaddy, including directing Gaddy to inspect a building because it would be unsafe for a Caucasian to do so and "you all look alike;" Diaz precluded Gaddy from taking a lunch; and Diaz reported Gaddy as absent without leave when Gaddy took authorized sick leave.  This evidence, coupled with Diaz's initial failure to reprimand Smith for the work order incident when she was later required to do so, is sufficient to create an inference of discrimination.  Gaddy presented a prima facie case of racial discrimination based on the written reprimand.

Gaddy, however, did not establish a prima facie case she was reprimanded due to gender. Gaddy's evidence solely implicates racial discrimination; she presents no evidence Diaz acted with any gender animus.  See Bullock, 71 F. Supp. 2d at 489-90.

          b.      Termination

Gaddy does not establish a prima facie case PHA terminated her due to discrimination. Bryant made the final decision to terminate Gaddy, see Defendant's Ex. M; Plaintiff's Ex. I at 39, based on an investigation report by PHA police, see Plaintiff's Ex. I at 39.  Although Diaz reported the possibility of a residency violation, she was not involved in the decision to initiate an investigation or the decision to terminate Gaddy.  See Plaintiff's Ex. I at 17, 39.  Gaddy presents no evidence Bryant acted with discriminatory animus and does not establish a causal nexus between her race and/or gender and the decision to terminate her employment.  See

Sarullo, 352 F.3d at 798.  In addition, Gaddy's brief and oral argument maintained the

termination decision was unlawful solely based on PHA's retaliation for Gaddy's filing of a

PHRC complaint, not because of her race or gender.  See Plaintiff's Response.  The evidence

presented does not allow an inference the termination decision was based on race or gender.  See

Sarullo, 352 F.3d at 798.

       2.    Pretext

If a defendant produces a legitimate nondiscriminatory reason, the plaintiff can defeat

summary judgment by providing evidence "from which a fact finder could reasonably either (1)

disbelieve the employer's articulated legitimate reason; or (2) believe the invidious

discriminatory reason was more likely than not a motivating or determinative cause of the

employer's action."  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).  Therefore, "a plaintiff

who has made a prima facie case may defeat a summary judgment motion by either (1)

discrediting the proffered reasons . . . , or (2) adducing evidence . . . discrimination was more

likely than not a motivating or determinative cause of the adverse employment action."  Id.  The

plaintiff's evidence "must allow a factfinder reasonably to infer each of the employer's proffered

non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually

motivate the employment action."  Id. (internal citations and emphasis omitted).

To discredit the proffered reason, the plaintiff "cannot simply show that the employer's

decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory

animus motivated the employer, not whether the employer is wise, shrewd, prudent, or

competent."  Id. at 765.  The plaintiff must demonstrate "such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons

14

for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" <u>Id.</u> at 765 (emphasis omitted) (citing <u>Ezold</u>, 983 F.2d at 531); <u>see</u> <u>Carilli</u>, 67 Fed. Appx. at 135 (the plaintiff did not prove pretext through evidence challenging the allegations which formed the basis of the committee's decision).

"To avoid summary judgment, the plaintiff must point to some evidence from which a factfinder could reasonably conclude that the plaintiff satisfied the criterion that the decisionmakers disapproving of him relied upon . . . or that the decisionmakers did not actually rely upon that criterion." <u>Fuentes</u>, 32 F.3d at 767. The "standard places a difficult burden on the plaintiff" because it "'arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs.'" <u>Id.</u> at 765 (quoting <u>Ezold</u>, 983 F.2d at 531).

In <u>Carilli v. Mutual of Omaha Insurance Co.</u>, 67 Fed. Appx. 133 (3d Cir. 2003) the Third Circuit found the plaintiff did not present sufficient evidence of pretext to survive summary judgment. It determined that "stray remarks by non-decisionmakers . . . are inadequate to support an inference of discrimination." <u>Id.</u>. at 135 (qouting <u>Gomez v. Allegheny Health Servs., Inc.</u>, 71 F.3d 1079, 1085 (3d Cir. 1995)). Although the plaintiff "present[ed] evidence of numerous stray remarks by 'non-decisionmakers' . . . which would indicate potential discriminatory animus by those 'non-decisionmakers,'" the court noted such evidence "fail[ed] to link those remarks to the [committee] so as to reasonably support an inference of discriminatory intent and pretextual termination by that body." <u>Id.</u>. at 135 (citing <u>Gomez</u>, 71 F.3d at 1085).

a.      <u>Written Reprimand</u>

PHA claims Diaz disciplined Gaddy because she failed to follow PHA's standard

15

practices when she entered an emergency work order.  See Defendant's Memorandum at 17.

PHA claims Diaz did not discipline Smith because she believed the maintenance staff computers

were down and, therefore, Smith was unable to check the computer system.  See Defendant's

Memorandum at 18.  This is a legitimate non-discriminatory reason.  Fuentes, 32 F.3d at 763

(employer satisfies burden where the evidence, "taken as true, would permit the conclusion that

there was a non-discriminatory reason" for the decision).  Gaddy claims the reason is pretextual

because the computer system was working and it was not PHA policy to require calls to

maintenance on emergency work orders.  See Defendant's Memorandum at 18.  Whether Gaddy

was reprimanded due to her failure to telephone Smith or because of her race is a jury question,

involving issues of credibility.  See Anderson, 477 U.S. at 255 (court may not make credibility

determinations).  Therefore, a genuine issue of material fact exists and summary judgment for the

racial discrimination claim based on the written reprimand is denied.  See Fed. R. Civ. P. 56(c).

> b.   Termination

Even if Gaddy established a prima facie case that her termination was based on race or

gender, she fails to establish PHA's legitimate non-discriminatory reason is pretext for

discrimination.  See Carilli, 67 Fed. Appx. at 135.  PHA claims it had a legitimate non-

discriminatory reason for terminating Gaddy, i.e., Gaddy's violation of the residency

requirement.  See Defendant's Memorandum at 18.  Gaddy claims this reason was pretext for a

discriminatory reason arguing Gaddy resides in Philadelphia and PHA's investigation was poorly

conducted.  See Plaintiff's Response at 31 -37.

Although Gaddy connects Diaz with discriminatory statements and conduct, Gaddy fails

to establish Diaz was involved in the investigation or termination decision beyond her initial

16

referral of the potential residency violation.  Gaddy presents no evidence Bryant or PHA police discriminated against her because of her race or gender.  Moreover, the adequacy of the police investigative techniques and methods is irrelevant.

Accordingly, Gaddy fails to present evidence PHA's legitimate non-discriminatory reason was pretext for discrimination and PHA's motion for summary judgment for the racial and gender discrimination claims based on the termination is granted.  See Fuentes, 32 F.3d at 767.

B.      Retaliation

Gaddy's retaliation claim is also govern by the McDonnell-Douglas burden shifting analysis.  Therefore, Gaddy must establish a prima facie case of retaliation, the burden of production shifts to PHA to articulate a legitimate, non-retaliatory reason for the adverse action, and Gaddy then has an opportunity to show PHA's reason was pretext for discrimination.  See Marra v. Phila. Housing Auth., 497 F.3d 286, 300 (3d Cir. 2007 (citing Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997) and Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006)).

1.      Prima Facie Case

To establish a prima facie case of retaliation, "a plaintiff must show that (1) she engaged in a protected activity under Title VII; (2) the employer took an adverse action against her; and (3) there was a casual connection between the employee's participation in the protected activity and the adverse employment action."  Wilkerson v. New Media Tech. Charter Sch. Inc. 522 F.3d 315, 320 (3d Cir. 2008) (citing Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006)).  PHA claims Gaddy failed to provide evidence of a casual connection between her PHRC charge

17

and her termination.[7]  See Defendant's Memorandum at 24.

"It is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn."  Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997).  The element "necessarily involves an inquiry into the motives of an employer" and is "highly context-specific."  Kachmar, 109 F.3d at 178.

Causation may be established in numerous ways.  Bailey v. Commerce Nat'l Ins. Servs., Inc., 267 Fed. Appx. 167, 170 (3d Cir. Feb. 29, 2008).  For temporal proximity to establish a causal link, the timing of the "retaliatory action must be 'unusually suggestive' of retaliatory motive before a casual link will be inferred."  Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (citing Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997)).  In Fasold v. Justice, 409 F.3d 178, 189-90 (3d Cir. 2005), the court found temporal proximity where the claim was less than three months before the adverse employment action.  Fasold, 409 F.3d at 190.   In Bailey, however, the court found the plaintiff did not establish causation because the four-month lapse between her protected activity and termination was not "unusually suggestive of retaliatory motive."  Bailey,267 Fed. Appx. at 170.

Absent temporal proximity, "circumstantial evidence of a pattern of antagonism following the protected conduct" or "the proffered evidence, looked at as a whole" may raise the inference of discrimination.  Bailey, 267 Fed. Appx. at 170 (citing Kachmar, 109 F.3d at 177). For example, inconsistent reasons for terminating an employee can establish the causal

---

[7]   PHA concedes Gaddy engaged in protected activity when she filed a discrimination charge with the PHRC and suffered an adverse employment action when she was terminated.  See Defendant's Memorandum at 24.

connection.  See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000) (citing

Waddell v. Small Tube Prods., Inc., 799 F.2d 69, 73 (3d Cir. 1986)).

Gaddy's charge of discrimination was filed in May 2004; PHA began an investigation

into Gaddy's residency in September 2004; and PHA terminated Gaddy in January 2005.

Therefore, the investigation began more than three months after the charge was filed and Gaddy

was terminated within eight months of filing her claim.  Such temporal proximity is not

"unusually suggestive."  See Bailey, 267 Fed. Appx. at 270.

Nevertheless, Gaddy alleges she proved causation because when she was terminated, her

charge of discrimination was pending and an investigation was ongoing.  See Plaintiff's

Response at 38.  She suggests that the four-month lapse between the initial investigation and

Gaddy's termination could lead a reasonable jury to conclude PHA police found Gaddy violated

the residency policy only "at the request of PHA hierarchy."  See Plaintiff's Memorandum at 34.

Although causation, is not proved merely because a charge is pending or an investigation is

ongoing, see Rivadeneira v. City of Philadelphia, 1994 WL 594122, at *10 (E.D. Pa. Oct. 31,

1994) (Reed, J.), Gaddy presented sufficient additional evidence of causation from which a

reasonable jury could find a prima facie case of retaliation.

Bryant and Grdinich knew Gaddy filed a discrimination charge prior to her termination.

See Plaintiff's Ex. I at 12.  A residency investigation was conducted by PHA police in

September.  Id. at 45.  Although PHA police allege they prepared a report, the report is not in

evidence.  See Plaintiff's Ex. G at 13.  Following a January meeting in Bryant's office to discuss

the possible residency violation, a PHA police detective and Grdinich accompanied Gaddy to

inspect her Philadelphia property.  Id. at 42.  Grdinich, who is an equal employment opportunity

officer under Bryant's supervision, had never before conducted such a inspection, and it is unclear why she participated here. <u>See</u> Plaintiff's Ex. O at 11-12. After the home visit, PHA police filed an updated report concluding Gaddy violated the residency policy. <u>See</u> Defendant's Ex. J. PHA maintains when the PHA police updated the report they changed its date from September to January. <u>See</u> Defendant's Ex. G at 13. Bryant allegedly based Gaddy's termination on this updated report. <u>See</u> Plaintiff's Ex. I.

A reasonable jury could conclude the September investigation of Gaddy's residency was inconclusive, the January home inspection was somehow influenced by Grdinich and Bryant, and Bryant found Gaddy violated the residency policy only in retaliation for filing a charge of discrimination. The credibility of the police officers statements regarding the original and updated report, as well as the credibility of Grdinich and/or Bryant, who knew of Gaddy's complaint, make this issue a quintessential jury question. Thus, Gaddy presented sufficient evidence of a casual connection between her protected activity and her termination. <u>See</u> <u>Bailey</u>, 2008 WL 542471, at *2.

    2.    <u>Pretext</u>

PHA presented a legitimate non-discriminatory reason for terminating Gaddy, i.e., Gaddy violated PHA's residency requirement. <u>See</u> Plaintiff's Memorandum at 26. Therefore, to survive summary judgment Gaddy must establish this articulated reason is pretext for discrimination. <u>See</u> <u>Fuentes</u>; <u>accord</u> <u>Marra</u>, 497 F.3d at 300 (applying pretext analysis to retaliation claim). "[I]f the aggrieved employee can raise evidence sufficient 'to discredit the [employer's] proffered reasons . . . the [employee] need not also come forward with additional evidence of discrimination beyond" her prima facie case to survive summary judgment. <u>Fasold</u>

20

v. Justice, 409 F.3d 178, 185 (3d Cir. 2005) (quoting Fuentes, 32 F.3d at 764).

      Gaddy's evidence of a prima facie case also is sufficient to discredit the proffered reason. If believed, the evidence will show Gaddy did not violate PHA's residency policy and therefore, PHA's legitimate, non-discriminatory reason for the termination was pretext for retaliation.  See Fasold, 409 F.3d at 185.

      Accordingly, PHA's motion for summary judgment for the retaliation claim is denied.

      C.      Hostile Work Environment

      A hostile work environment occurs when unwelcome racial or sexual conduct unreasonably interferes with a person's performance or creates an intimidating, hostile, or offensive working environment.  See Weston v. Pennsylvania, 251 F.3d 420, 425-26 (3d Cir.2001) (citing Meritor Sav. Bank FSB v. Vinson, 477 U.S. 57, 65-67 (1986)).  "[T]he harassment must be so severe or pervasive that it alters the conditions of employment and creates an abusive environment."  Weston, 251 F.3d at 426 (citing Meritor, 477 U.S. at 67).  To establish a prima facie hostile work environment case Gaddy must prove (1) she suffered intentional discrimination because of her membership in a protected class; (2) the discrimination was pervasive and regular; (3) she was detrimentally affected by the discrimination; (4) the discrimination would detrimentally affect a reasonable person in her position; and (5) respondeat superior liability exists.  Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990); accord Weston, 251 F.3d at 426; Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001).

      Courts consider the following factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employee's work performance." Weston, 251 F.3d at

426 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).  The record must be evaluated

as a whole.  Cardenas, 269 F.3d at 261 (citing Durham Life Ins. Co. v. Evans, 166 F.3d 139, 149

(3d Cir. 1999)).  "Both 'facially neutral mistreatment . . . [and] overt'" discrimination can

constitute a hostile work environment.  Cardenas, 269 F.3d at 261 (quoting Durham Life Ins. Co.,

166 F.3d at 148).  "[S]imple teasing, offhand comments, and isolated incidents (unless extremely

serious) will not amount to discriminatory changes in the terms and conditions of employment."

Icleanu v. Am. Baptist Churches USA, 2007 WL 2461822, at *10 (E.D. Pa. Aug. 8, 2007) (Kelly,

J.) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998)).

An environment is hostile where the discrimination is pervasive and regular such that the

conduct "creates an environment 'severe enough to affect the psychological stability of a

minority employee,' both subjectively and objectively."  See Griffin v. De Lage Landen Fin.

Servs, Inc., 219 Fed. Appx. 245, 247 (3d Cir. 2007) (quoting Andrews, 895 F.2d at 1469).  For

example, in Andrews, female officers presented a hostile work environment claim where other

officers displayed pornographic materials, used sexist slurs, vandalized personal property, left

anonymous threatening phone calls, and used a burning agent on the female officers clothes.  Id.

at 1472-74; accord Griffin, 219 Fed. Appx. at 247.

Similarly, in Cardenas v. Massey, 269 F.3d 251 (3d Cir. 2001), the Third Circuit found

the plaintiff presented sufficient evidence to create a genuine issue of material fact.  Id. at 263.

The Mexican-American plaintiff presented the following evidence: oral and written ethnic slurs;[8]

the employer elevated employee evaluations for those not in the protected class but reduced the

---

[8]  Plaintiff was called "the boy from the barrio," asked why he angilcized his name, and asked
whether he intended to pull out a switchblade to deal with disagreements.  Cardenas, 269 F.3d at
258.  The plaintiff also found messages on his marker board, including the term "mojado"
meaning "wetback."  Id.

plaintiff's evaluations; disproportionate assignment of minority employees to the only unit supervised by a minority manager; supervisors consistently gave knowingly contradictory instructions to the plaintiff; and the plaintiff was publicly berated and assigned items too complicated for his unit, which had a large number of trainees. <u>Cardenas</u>, 269 F.3d at 258-59, 262-63.

In <u>Sherrod v. Phila. Gas Works</u>, 57 Fed. Appx. 68 (3d Cir. 2003), however, the Third Circuit found plaintiff did not present sufficient evidence of a hostile work environment. <u>Id.</u> at 77. In <u>Sherrod</u>, the evidence consisted of two racially motivated comments, plaintiff's exclusion from one meeting, one of plaintiff's reports was thrown away, and a colleague was told not to listen to the plaintiff. <u>Id.</u>. The court found the conduct did not interfere with plaintiff's work performance and would not have detrimentally affected a reasonable person in the plaintiff's position. <u>Id.</u>; <u>see</u> <u>Griffin</u>, 219 Fed. Appx. at 247 (evidence plaintiff left out of eight meetings over two and one-half years is not severe and pervasive harassment).

Gaddy claims in the nine months Diaz supervised her, Diaz made derogatory comments, required her to work through lunch, improperly cited her as absent without leave, referred to her as a kidnapper, gave an unfair employment review, and improperly reprimanded her. <u>See</u> Plaintiff's Response at 39. No reasonable jury could conclude such conduct was so severe and pervasive that it created a hostile work environment. Diaz's alleged comments about African Americans are offensive, but her reference to Gaddy as a kidnapper was based on Gaddy's unrelated dispute with a tenant who had made a complaint of kidnapping. Similarly, the report of Gaddy as absent without leave is not sufficiently severe to alter Gaddy's daily working conditions. <u>See</u> <u>Faragher</u>, 524 U.S. at 778 (offhand comments and isolated incidents will not

23

alter the conditions of employment).  The allegations did not involved physical threats or humiliation, or conduct of sufficient frequency that interfered with Gaddy's work performance. Compare Andrews, 895 F.2d at 1482.  Gaddy fails to adduce evidence of a work environment "severe enough to affect the psychological stability of a minority employee,' both subjectively and objectively."  See Griffin, 219 Fed.Appx. at 247 (quoting Andrews, 895 F.2d at 1482). Accordingly, no genuine issue of material fact exists and summary judgment for the racial hostile work environment claims is granted.[9]  See Fed. R. Civ. P. 56(c).

       An appropriate order follows.

---

[9]  Gaddy also presented no evidence of a gender based hostile work environment.  Therefore, no genuine issue of material facts exists and summary judgment for the gender hostile work environment claim is granted.  See Fed. R. Civ. P. 56(c).